PER CURIAM.
Roman was convicted of attempted first degree premeditated murder and aggravated battery. The trial court granted a new trial and the State appeals. We reverse.
We recognize that a trial judge may grant a new trial if the verdict is contrary to law or the weight of the evidence. There is no contention on appeal that this verdict was contrary to law so our inquiry should be whether the verdict is contrary to the weight of the evidence. The trial court in its order granting the new trial found that because it believed that the issue of premeditation was so close, the jury may have been influenced by the admission of a note in Spanish which the jury found in a composite exhibit[1] and the fact that the prosecutor continued to question a witness called by the State even after the witness refused to answer questions.[2] Because in determining a motion for new trial under the weight of the evidence standard the judge is permitted to sit “as an additional juror,” it is extremely rare that an appellate court will interfere. We believe this to be that rare case.
The trial court is certainly free to judge the credibility of the witnesses. There is *875 no indication, however, that this order was based on a credibility of witness problem. The court merely observed that it found the issue of premeditation extremely close based on the evidence submitted. We find that the record does not support the court’s “weighing,” and that the grant of the new trial was therefore an abuse of discretion.
Although Roman does not deny that he repeatedly rammed his former wife’s car (with her in it) with his car, he contends that he had no intention of hurting her; he only intended to destroy her car because he was mad at her. Now weigh this testimony against the other testimony in the case.
The victim testified that she was at the post office depositing letters when someone rammed her vehicle from behind. She did not recognize the vehicle which struck her vehicle (Roman had recently rented it) nor did she immediately recognize the driver. When she exited the vehicle to check for damage, she recognized Roman in a wig and sunglasses. She immediately returned to her vehicle and locked the doors. Roman was unable to open the door. The victim then fled the area at a high rate of speed, even running some stop lights, with Roman in close pursuit.
Duane Luft was on his way to work when he observed the chase and believed the parties were playing “bumper tag.” He testified that Roman kept hitting the victim’s vehicle. He further testified:
[A]s I’m approaching 436 intersection, I could hear more of the same cars colliding and screeching and sliding and I looked over my shoulder, they were coming at me and I had to veer way off because I was going to get into the lane to turn left to get the interstate and just as the road starts to divide where I had to go all the way to the far right to avoid getting caught up again. And I accelerated to get out of their way because at that time the [victim’s vehicle] was spinning around because the little car was pushing it.
Fred Comer, another witness to the event, testified that it appeared to be a little “demolition derby” going on in the road. When the victim’s vehicle was pushed into the curb, the tire separated from the rim and the vehicle became inoperable. The victim exited her vehicle and started running. Roman, while he was about 150 feet from the victim, accelerated his vehicle and started chasing her. Luft had stopped his vehicle and stepped outside it to observe the events. He described the chase as follows:
The woman ran to the right, the black [sic] car spun around and pursued her. It was like the front bumper never left her heels. No matter which way she went, the car constantly chased her [.] No matter what she did she couldn’t get away from the ear.
Another eye witness, Donna Smith, testified to the following:
She was running back and forth, the car was doing the same thing she was doing. The car was going from the median to the grass from the median to the grass and back and forth.
When she was zigzagging across the road he zigzagged his vehicle in the same direction she was going, just kind of followed her in the same motion.
The chase took about a minute. Luft observed a brick wall about three feet high along the side of the road and yelled for the victim to go to the wall. However, when the victim saw Luft near his vehicle with the door open, she ran toward him. She almost made it when Roman caught up with her. Luft describes what happened when Roman’s vehicle hit the victim:
She flew up in the air, her head hit the windshield and she tumbled right over *876 the passenger side. [S]he tumbled up and she hit her head and went right over the roof of the car down the passenger side where the door is.
Luft ran to her assistance and Roman swerved to miss Luft and left the scene. Luft then saw that Roman was wearing a long wig and had a smile on his face.
The court in its order observed that this event was apparently a part of a domestic dispute and that determining credibility is often difficult in such cases. But neither Luft, Smith, or Comer were part of the domestic arrangement. They testified that Roman, while disguised, repeatedly ran his vehicle into a vehicle being driven by the victim until he disabled it and then chased down the victim and intentionally ran into her. The issue of premeditation is not close at all from this record and a new trial was not warranted and cannot be sustained even under the liberal “weight of the evidence” standard.
WE REVERSE with directions to reinstate the jury’s verdict and proceed with sentencing.
HARRIS, GRIFFIN and SAWAYA, JJ., concur.

. The jury sent the judge a message mentioning the note and asked the court to provide an interpretation if the jury should be concerned with the note. The judge refused to provide an interpretation. There is simply no indication that this note which the jury could not read played any role in its verdict. Farther, as the trial court noted, the text of the note was irrelevant to the issues in the case.

. Nothing that the witness said, or refused to say, prejudiced Roman in any way.